United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICARDO C. RAYGOZA,

        Petitioner,

    v.

KIM HOLLAND,

        Respondent.

Case No. 16-cv-02978-EMC

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Ricardo Raygoza, a prisoner currently incarcerated at the Correctional Training Facility in Soledad, filed this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. Raygoza's petition is now before the court for review on the merits. For the reasons discussed below, the petition for writ of habeas corpus will be **DENIED**.

## I.    BACKGROUND

The California Court of Appeal described the facts of the offenses and the evidence presented at trial:

> Appellant lived with his girlfriend and her four children.[3] Appellant was not the biological father of his girlfriend's children. These children, Jane I, Jane II, and Jane III and their brother Eric had lived with appellant since they were young. Jane I the oldest daughter was 21 years younger than appellant.
>
> > [Footnote 3:] Appellant and his girlfriend had four more children with whom they lived; appellant was their biological father.
>
> *Jane I—Counts One through Six*
>
> Jane I testified that when she was 11, while the family was living in a house on Del Monte, appellant entered her bedroom while she was lying on the bed watching television with her brother Eric. Appellant got on top of her and starting "going up and down," pressing his pelvic area against her stomach. At the time, Jane I

thought that appellant was playing; she did not tell anyone what had happened. It was only as she grew older that she realized that appellant was not playing.

When the Del Monte house burned down, the family moved into a hotel before moving to another house. Appellant admitted to the police that while the family was at the hotel he touched Jane I on the inner thigh, leg and foot.

When the family moved to a house on Ramona, Jane I was about 14 years old; appellant would come to where she was sleeping at night and touch her while other family members were sleeping. This happened more than once and continued when she turned 15, 16, and 17. On one occasion, Jane I watched appellant crawl up to her bed and felt him slowly rub her thigh back and forth in a way that felt sexual. Another time she awoke to hear the sound of someone trying to open her bedroom door, which she had locked to prevent appellant from coming in. When appellant saw that Jane I was awake he left the room. On yet another occasion, Jane I woke up to find appellant rubbing her on her leg. When she told him to stop appellant ran away.

At one house, Jane I slept in the same room as her brother Eric. On one occasion after she had locked the bedroom door, appellant tried to open the door using a screwdriver. When Jane I heard the noise she opened the door; appellant pulled her out of the room, pushed her against the hallway wall, grabbed her arms with his hands and kissed both sides of her neck for about five minutes. Jane I screamed and struggled. Appellant threatened to hurt Jane I's mother if she continued to scream. Jane I believed appellant because she had seen appellant hit her mother before.

When the family moved to an apartment on Laurel Street, Jane I shared a bedroom with Eric and Jane II and III. When Jane I was about 16, appellant came into the room, lifted Jane I's blankets and tried to get into bed with her. Jane I kicked him and he left.

When Jane I was approximately 16 she was just about to get into the shower when she noticed a pencil coming through the wall of the bathroom; appellant's closet was on the other side of the wall. Jane I told her mother about the hole and they covered it with putty; soon it became uncovered. Jane I put toilet paper into the hole, but appellant pushed the paper out with a pencil while Jane I was using the toilet.

When Jane I was about 17, appellant asked her for her cellular telephone while she was sitting on the couch. When Jane I handed it to him, appellant touched her breast. When she responded by walking away, appellant touched her "butt" and whispered "Mamacita." Appellant licked his mouth at Jane I in a similar way to when he licked his mouth at Jane I's aunt when he would comment on the size of her breasts.

After Jane I turned 17, appellant began exposing his penis to her. On one occasion while Jane I was watching television in her room she saw appellant looking at her from the bathroom. The door to her room and the bathroom door were open. Appellant was facing her

2

with his boxers down and his penis exposed. Appellant grabbed his penis; Jane I covered her eyes. On another occasion, appellant opened the door to the bedroom Jane I shared with her siblings when they were all in the room. When Jane I turned around to see who had opened the door, appellant pulled down his boxers exposing his penis.

*Jane II—Counts Six through Nine*

When Jane II was 12, appellant entered her bedroom at night and touched her vagina under her underwear. Jane II explained she woke up feeling as if she needed to go to the bathroom and screamed when she saw appellant standing touching her. The scream woke her siblings and appellant ran away. On another occasion when Jane II was 11 years old she was in a car with appellant and some of her siblings; appellant touched her vagina over her clothes for about 10 seconds. Jane II told him to stop, but appellant said he was just playing. Appellant also touched her chest under her shirt, again, for about 10 seconds. On a different occasion while Jane II was watching television in the living room of the Laurel Street apartment, appellant touched her on the chest under her shirt and held his hand there for about 10 seconds. Jane II remembered another incident that happened while they were playing hide and seek. While Jane II was on the back of the couch trying to jump out of the window appellant touched her on her "boobs." Appellant pulled Jane II down and touched her. Jane II testified that appellant was not supposed to do that. Jane II pushed appellant and he stopped.

*Jane III—Count 10*

When Jane III was about 10 or 11 appellant came over to Jane III while she was watching television and began wrestling with her. Suddenly, appellant put his hand under her clothes and touched her breasts. Jane III testified that it was not an accident. She knew that appellant had touched her sisters.

Eventually Jane I, II and III told their mother about the touching. Their mother confronted appellant and she asked appellant to leave; he responded by hitting her on the nose three times with his forehead and threatening to take the children with him. When she threatened to call the police, appellant took away her cellular telephone.

Eric confirmed that a person could see into the bathroom from appellant's closet using the peephole; he told his mother about this fact.

Eventually, Jane I turned to a school counselor for help and the counselor contacted the police. All the children were placed in a foster home.

The police interviewed appellant. He admitted touching Jane I's breasts and buttocks and that he had rubbed her inner thigh while she was sleeping. He admitted touching Jane II on the vagina over her clothes and that he made the peephole in the bathroom with a

> pencil so he could look at Jane I while she was naked. Appellant admitted that he got "turned on" when he looked at Jane I or touched her. Appellant confessed to kissing Jane I while she was asleep and caressing Jane I on the thigh while the family was staying at a hotel. He admitted touching Jane II by pulling down her underwear while she was asleep and touching Jane III on the buttocks. However, he denied touching Jane II's vagina while they were in a car or climbing on top of Jane I. Appellant wrote an apology letter asking his step-daughters to forgive him and said that he was "sorry for everything." A videotape of appellant's interview was played for the jury.

Cal. Ct. App. Opinion, pp. 2-6 (footnote omitted).

Following a jury trial in Monterey County Superior Court, Mr. Raygoza was convicted of six counts of committing a lewd or lascivious act on a child under the age of 14, two counts of committing a lewd or lascivious act on a child over the age of 14 where the defendant is 10 years or more older than the victim, and two counts of annoying or molesting a child. The jury found true the allegation that Mr. Raygoza had committed the offenses on more than one victim. He was sentenced to a total of 30 years to life in prison consecutive to a term of two years, eight months in prison.

Mr. Raygoza appealed. The California Court of Appeal affirmed the judgment of conviction on June 4, 2014. The California Supreme Court denied the petition for review on August 20, 2014.

Mr. Raygoza then filed this action. In his federal petition for writ of habeas corpus, he alleges the following claims: (1) the amendment of the information after the close of evidence violated Mr. Raygoza's right to notice under the Sixth and Fourteenth Amendments; (2) the CALCRIM No. 1110 instruction violated his rights to a jury trial and due process because it eliminated the need for the jury to find all elements of a California Penal Code section 288(a) offense beyond a reasonable doubt; (3) the CALCRIM No. 1191 instruction violated Mr. Raygoza's right to due process because it allowed the use of charged offenses as evidence of his propensity to commit other charged offenses; (4) the admission of evidence of Mr. Raygoza's prior violent acts violated his right to due process; (5) the prosecutor committed misconduct during closing argument when he vouched for a witness; (6) cumulative error; (7) the admission of Mr. Raygoza's pretrial statement violated his *Miranda* rights; (8) trial counsel was ineffective in failing to object to the introduction of Mr. Raygoza's interrogation; and (9) appellate counsel was

4

ineffective in failing to assert a Fifth Amendment violation. Claim 7 was dismissed as procedurally defaulted, and Claims 8 and 9 were dismissed as unexhausted. *See* Docket Nos. 16 and 18. The parties have briefed the merits of Claims 1-6 and those claims are now ready for decision on the merits.

## II.     STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the

state court, if there is a reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## III. DISCUSSION

### A. The Amendment of the Charging Document

Mr. Raygoza contends that the amendment of the information at the close of the prosecution's case-in-chief violated his Sixth Amendment right to notice of the charges. The amendment at issue was a date change for Count 1, which charged Mr. Raygoza with committing a lewd act on Jane I, in violation of California Penal Code section 288(a).[1] Whereas the amended information in place at the beginning of trial charged him with committing the Count 1 act "on or about June 1, 2005 through August 23, 2005," the amendment at the close of the prosecution's case-in-chief charged him with committing the Count 1 act "on or about August 24, 2003 through August 23, 2004." *See* CT 110-111; RT 1882.

#### 1. Background

##### a. Charges and Trial Court Proceedings

A preliminary hearing was held on November 13, 2009. See CT 18-34. None of the three child-victims testified, but a police officer who had interviewed Jane I and Jane II did testify about their statements to him. The officer stated that Jane I told him that the first time that Mr. Raygoza touched her "had taken place approximately four years before" the officer spoke to her on August 31, 2009. CT 20. Jane I told the officer that, when she was laying in bed facing the ceiling at the house on Del Monte Avenue in Salinas, Mr. Raygoza "basically climbed on top of her, you know,

---

[1] There were four additional counts against Mr. Raygoza in which Jane I was listed as the victim: The dates alleged for those four counts were in 2007 and 2008. Counts 2 and 3 alleged violations of California Penal Code section 288(c)(1) (i.e., lewd act on a "child of 14 or 15 years"); counts 4 and 5 alleged violations of California Penal Code § 647.6(a) (i.e., misdemeanor child molesting. CT 110-18.

facing towards her so that her vaginal crotch area was touching his private part area as they faced

each other," and moved in an up-and-down motion while both she and Mr. Raygoza were clothed.

CT 20. Jane I did not tell the officer that the event occurred in 2005, CT 27; instead, she said that

it occurred "four years prior and that it was during the summer vacation time of the year." CT 26.

An information filed on November 17, 2009, alleged that the Count 1 act occurred "on or

about June 1, 2005 through September 1, 2005." CT 36. The information was amended with a

handwritten interlineation dated June 4, 2012, alleging that the Count 1 act occurred "on or about

June 1, 2005 through August 23, 2005." CT 110. Thus, at the start of the jury trial on June 27,

2012, Count 1 read as follows:

> Count: 001. On or about JUNE 1, 2005, THROUGH AUGUST 23,
> 2005, the crime of LEWD ACT UPON A CHILD, in violation of
> Section 288(a) of the Penal Code, a FELONY, was committed by
> RICARDO RAYGOZA, who at the time and place last aforesaid,
> did willfully, unlawfully, and lewdly commit a lewd and lascivious
> act upon and with the body and certain parts and members thereof of
> JANE DOE # 1 (DOB: 08/24/1992), a child under the age of
> fourteen years, with the intent of arousing, appealing to, and
> gratifying the lust, passions, and sexual desires of the said
> defendant(s) and the said child. It is further alleged that the above
> offense is a serious felony with the meaning of Penal Code Section
> 1192.7(c)(6).

CT 110-11.

At trial, Jane I described the same incident that she had described to the police officer, and

testified that Mr. Raygoza "got on top of [her] and started going up and down" while she was

"laying in bed watching TV." RT 1242. However, she remembered the incident had occurred

"[w]hen [she] was, like, 11." RT 1241. She testified that the incident happened at the Del Monte

house. RT 1242. Jane I testified that the Del Monte house burned down when she had just started

high school. RT 1323. Her mother recalled that the Del Monte house had burned down around

2007. RT 1568. "This was the only incident that she testified happened while she was less than

14 years of age." Cal. Ct. App. Opinion at 6-7.

At the close of the prosecution's case-in-chief, the prosecutor moved to amend the

information to change the date range for Count 1 to be August 24, 2003, through August 23, 2004,

RT 1880-82, to reflect the time frame during which Jane I was 11 years old. Defense counsel did

7

1  not object to the motion. RT 1881. The court granted the motion, and determined that "Count 1

2  will be amended to conform to proof[:] August 24th, 2003, through August 23rd, 2004." RT

3  1882. After a recess, the defense rested without presenting any evidence. RT 1883. In

4  conformity with the amendment, the verdict form stated that the offense was committed "on or

5  about August 24, 2003 thru August 23, 2004." CT 216.

6          b.    Appeal

7          On appeal, the California Court of Appeal determined that Mr. Raygoza's claim that he

8  had been denied notice of the charge due to an improper amendment was procedurally defaulted

9  due to defense counsel's failure to object at trial: "Appellant has forfeited this claim by failing to

10  object to the amendment at trial. Having failed to claim surprise or to request a continuance,

11  appellant has forfeited any objection to the amendment to the information on the ground he did not

12  have adequate notice of it." Cal. Ct. App. Opinion, p. 7 (citations omitted).

13          The California Court of Appeal also rejected Mr. Raygoza's effort to overcome the

14  procedural default. Mr. Raygoza argued that the procedural default should be excused because

15  trial counsel had provided ineffective assistance in failing to object to the amendment. The state

16  appellate court identified *Strickland v. Washington*, 466 U.S. 668, 687 (1984), as providing the

17  controlling standard for ineffective-assistance claims and determined that there was neither

18  deficient performance nor resulting prejudice because any objection to the amendment would have

19  been futile.

20          Here, counsel could have considered an objection to the amendment
            of the information pointless because he had notice before trial of the
21          evidence upon which count one was based.

22          The general framework within which criminal pleadings are
            amended is statutorily derived and has remained constant since
23          1911. (*People v. Superior Court (Alvarado)* (1989) 207 Cal.App.3d
            464, 472.) [California Penal Code] Section 1009 authorizes
24          amendment of an information at any stage of the proceedings
            provided the amendment does not change the offense charged in the
25          original information to one not shown by the evidence taken at the
            preliminary examination. (*People v. George* (1980) 109 Cal.App.3d
26          814, 818–819.)

27          As pertinent here, the issue is whether the amendment to the
            information after all the evidence was in charged crimes different
28          than those alleged in the original amended information and shown

8

by the evidence at the preliminary hearing, thus depriving appellant of his due process right to notice of the allegations.

All of the pleadings consistently charged appellant in count one with committing a lewd or lascivious act against Jane I, a child under the age of 14 years old.

"Under the generally accepted rule in criminal law a variance [in pleadings] is not regarded as material unless it is of such a substantive character as to mislead the accused in preparing his defense...." (*People v. Williams* (1945) 27 Cal.2d 220, 226; see also *People v. Pitts* (1990) 223 Cal.App.3d 606, 905–907.) Furthermore, "[n]o accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits." (§ 960.)

"The law is clear that, when it is charged that an offense was committed "on or about" a named date, the exact date need not be proved unless the time "is a material ingredient in the offense" [Citation.]" (*People v. Starkey* (1965) 234 Cal.App.2d 822, 827.) In fact, when a defendant does not raise a specific alibi defense, the prosecution need only prove the act was committed before the filing of the information and within the period of the statute of limitations. (*People v. Fritts* (1977) 72 Cal.App.3d 319, 326; *People v. Aylwin* (1973) 31 Cal.App.3d 826, 841–842; *People v. Amy* (1950) 100 Cal.App.2d 126, 128.) The date change was not material to the charged offense in count one. Since appellant did not raise an alibi defense he was neither prejudiced nor misled, and the prosecution was only required to show a crime had occurred before Jane I's 14th birthday.

Contrary to appellant's assertions, the amendment did not prejudice appellant's ability to prepare and present his defense to the charge in count one as shown at the preliminary hearing and as originally alleged. Appellant denied climbing on top of Jane I at any time. The operative pleading under which appellant was convicted did not charge him with violating a different Penal Code section from that shown by the evidence at the preliminary hearing and alleged in the original amended information. Both pleadings were based on the same course of conduct, involving the same victim. Both pleadings dealt with the same underlying act—climbing on top of Jane I. Simply put, appellant was not presented with a moving target; he was fully aware of what he had to defend against. Plainly, appellant's substantial rights were not implicated.

Cal. Ct. App. Opinion at 8-10.

As the last reasoned decision from a state court, the California Court of Appeal's decision is the decision to be evaluated in this habeas action. Mr. Raygoza is entitled to habeas relief only if he can avoid the procedural default and then prevail on the merits of his claim.

9

2.    Analysis

The California Court of Appeal imposed a procedural bar to reject Mr. Raygoza's claim of a denial of his Sixth Amendment right to notice of the charges. This Court thus must determine whether that procedural bar requires dismissal of the federal habeas claim. To help the reader understand the procedural default analysis, the Court will summarize it first and then fill in the details. In brief, the Court's analysis is as follows: Mr. Raygoza's right-to-notice claim is procedurally defaulted because the defense failed to interpose a contemporaneous objection, as required by California law. A procedurally defaulted claim may be considered in a federal habeas action if a petitioner shows cause and prejudice for the procedural default. Ineffective assistance of counsel may provide cause to excuse a procedural default, but only if (a) the ineffective assistance amounts to constitutionally ineffective assistance of counsel, (b) the ineffective-assistance-of-counsel claim was presented as a separate claim in state court, and (c) state court remedies were exhausted for the ineffective-assistance-of-counsel claim. Mr. Raygoza does not show cause to excuse his procedural default based on ineffective assistance because his ineffective-assistance-of-counsel claim is meritless. Therefore, the right-to-notice claim will be dismissed as procedurally defaulted. A more detailed analysis follows.

a.    The Procedural Default

A federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds." *Id.* at 729-30. A "discretionary state procedural rule can serve as an adequate ground to bar federal habeas review." *Beard v. Kindler*, 558 U.S. 53, 60 (2009). A state procedural bar is "independent" if the state court explicitly invokes the procedural rule as a separate basis for its decision and the application of the state procedural rule does not depend on a consideration of federal law. *Vang v. Nevada*, 329 F.3d 1069, 1074-75 (9th Cir. 2003). An "adequate" state rule must be "firmly established and

10

regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Kindler*, 558 U.S. at 60-61). A rule can be "firmly established and regularly followed" even if it is discretionary, and even if the state court may choose to deny a procedurally barred claim on the merits. *See id.* at 316, 319. The state bears the burden of proving the adequacy of a state procedural bar. *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003).

Here, the California Court of Appeal determined that Mr. Raygoza "forfeited" his improper-amendment claim "by failing to object to the amendment at trial. [Citations.] Having failed to claim surprise or to request a continuance, appellant has forfeited any objection to the amendment to the information on the ground he did not have adequate notice of it." Cal. Ct. App. Opinion at 7.

The Ninth Circuit has determined that California's contemporaneous objection rule is "an independent and adequate state procedural rule" that bars federal habeas review of a claim. *See Fairbank v. Ayers*, 650 F.3d 1243, 1257 (9th Cir. 2011); *see also Zapien v. Martel*, 849 F.3d 787, 793 n.2 (9th Cir. 2015). The California Court of Appeal imposed a state procedural bar that is adequate and independent of federal law. Mr. Raygoza's right-to-notice claim is procedurally defaulted.

b.  There Was No Ineffective Assistance Of Counsel Providing Cause To Excuse The Procedural Default

Unless a habeas petitioner shows cause and prejudice, the court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992). The cause standard requires the petitioner to show that "some objective factor external to the defense" or constitutionally ineffective assistance of counsel impeded his efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). To satisfy the prejudice part of the cause-and-prejudice test, the petitioner must show actual prejudice resulting from the errors of which he complains. *See McCleskey v. Zant*, 499 U.S. 467, 494 (1991).[2]

---

[2] A federal court also may hear the merits of a procedurally defaulted claim if the failure to hear the claim would constitute a "miscarriage of justice." *See Sawyer*, 505 U.S. at 339-40. In the

In order for counsel's ineffectiveness to provide cause to excuse a procedural default, the attorney must "be constitutionally ineffective under the standard established in *Strickland v. Washington,"* 466 U.S. 668 (1984). *Murray v. Carrier*, 477 U.S. at 488. Under *Strickland*, a petitioner must establish two things to prevail on a Sixth Amendment ineffective-assistance-of-counsel claim. First, he must demonstrate that counsel's performance was deficient and fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland,* 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Attorney error that does not meet the *Strickland* standard does not suffice to provide cause to excuse a procedural default. *Murray v. Carrier*, 477 U.S. at 488. In addition to meeting the *Strickland* standard, for counsel's ineffectiveness to provide cause, the petitioner must have presented the ineffective-assistance-of-counsel claim as a separate claim to the state courts and exhausted state court remedies for that claim. *Murray v. Carrier,* 477 U.S. at 489.

The AEDPA's deferential standard in 28 U.S.C. § 2254(d) does not apply when a court is determining whether there was ineffective assistance of counsel for purposes of determining whether the cause and prejudice standard is met. *Visclotti v. Martel*, 862 F.3d 749, 768 (9th Cir. 2016), *cert. denied,* 138 S. Ct. 1546 (2017).[3] Rather, the court independently determines whether there was ineffective assistance of counsel, without any deference to the state court determination on the claim for ineffective assistance of counsel. *Id.*

---

federal habeas context, the "miscarriage of justice" exception is limited to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray v. Carrier*, 477 U.S. at 496). Mr. Raygoza does not argue that the miscarriage of justice exception applies to his case.

[3] There is a circuit split as to whether de novo or AEDPA deference is the proper standard of review when a federal habeas court examines whether there is ineffective assistance of counsel that supplies cause to excuse a procedural default. *Viscitti,* 862 F.3d at 769 & n.13. Respondent argues that there also is a split within the Ninth Circuit on this question and urges the Court to rely on the analysis in *Walker v. Martel*, 709 F.3d 925, 939-44 (9th Cir. 2013). *Walker* did not squarely address the standard of review, unlike *Viscitti*. This Court thus follows the clear holding from *Viscitti* rather than the implicit assumption (but not holding) in *Walker* that AEDPA deference applies to the cause and prejudice analysis.

Here, the alleged ineffective assistance of counsel consisted of trial counsel failing to object to the prosecution's request to amend the information. It thus is necessary to consider whether there was potential merit to such an objection because counsel does not engage in deficient performance by failing to raise a nonmeritorious issue. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (counsel's performance not deficient for failing to raise meritless objection); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (failure to take a futile action can never be deficient performance).

Mr. Raygoza fails to show deficient performance or resulting prejudice. He fails to show that an objection under state law would not have been futile. The California Court of Appeal determined that the amendment was permissible under state law because the "date change was not material to the charged offense" and did not prejudice the defendant's ability to prepare and present his defense. Cal. Ct. App. Opinion at 10. The California Court of Appeal's interpretation of California law is binding in this federal habeas action. *See Hicks v. Feiock*, 485 U.S. 624, 629-30 (1988). That is, this Court's analysis accepts that the law of California permitted the prosecution, late in the trial, to amend the information to change the date because the date change was not material to the charged offense and was not prejudicial to the defense. There would not have been a meritorious state law objection for counsel to make.

Mr. Raygoza also fails to show that an objection under the federal constitution would have been sustained. The amendment was not impermissible under federal constitutional law.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole v. Arkansas*, 333 U.S. 196, 201 (1948). A charging document, such as an information, is the means by which such notice is provided. *Gautt v. Lewis*, 489 F.3d 993, 1004 (9th Cir. 2007) (citing *Cole*, 333 U.S. at 201); *see, e.g., id.* at 1009 (defendant charged under one subsection of a statute could not be sentenced under

another subsection that had more requirements and carried a stiffer penalty).[4]  To satisfy the Sixth

Amendment right to notice, "the charging document need not contain a citation to the specific

statute at issue; the substance of the information, however, must in some appreciable way apprise

the defendant of the charges against him so that he may prepare a defense accordingly."  *Id.* at

1004; *see James v. Borg*, 24 F.3d 20, 25 (9th Cir. 1994) ("An information is not constitutionally

defective if it states the elements of an offense charged with sufficient clarity to apprise a

defendant of what to defend against").  The Ninth Circuit has recognized that, in "certain

circumstances," a court can examine sources other than the information for evidence that the

defendant did receive adequate notice.  *Gautt*, 489 F.3d at 1009, citing *Murtishaw v. Woodford*,

255 F.3d 926, 953–54 (9th Cir. 2001) (prosecution's opening statement, evidence presented at

trial, and the jury instructions conference provided notice to defendant of the prosecution's felony-

murder theory); *Calderon v. Prunty*, 59 F.3d 1005, 1009 (9th Cir. 1995) (prosecutor's opening

statement and statements at subsequent hearing, along with trial evidence and trial court's

description of crime scene, provided adequate notice of prosecution's lying-in-wait theory);

*Morrison v. Estelle*, 981 F.2d 425, 428–29 (9th Cir. 1992) (defendant received constitutionally

adequate notice of felony murder theory through the jury instructions the prosecutor submitted two

days before closing arguments and from the overall evidence presented at trial).  *See also*

---

[4] *Gautt* "eschewed express reliance on other sources, such as trial evidence, jury instructions, and closing arguments, to assess whether the petitioner received adequate notice of the charges, [but] nonetheless 'assume[d]--without deciding--that such sources can be parsed for evidence of notice to the defendant.  Nevertheless, [*Gautt*] concluded that, even considering these sources, the petitioner received constitutionally inadequate notice."  *Cain v. Chappell*, 870 F.3d 1003, 1013 (9th Cir. 2017) (citations omitted).  *Gautt* had some language suggesting that the court could look only at the language of the information to determine adequacy of notice, but that portion of the case is distinguishable from Mr. Raygoza's issue because *Gautt* was not addressing whether a prosecutor could amend the information; instead, *Gautt* was examining the situation where there was no amendment to the information and the sentence enhancement was imposed under a provision different from the provision charged in the information.  The "pivotal fact" in Gautt was the complete omission of any mention of the specific sentence-enhancement statutory provision in the information that was later used to increase the petitioner's sentence.  *Gautt*, 489 F.3d at 999. The confusion between the two sentence enhancement provisions in *Gautt* -- one alleged in the information but the other one not alleged in the information -- was exacerbated when the trial court confused the two provisions in the jury instructions, the prosecutor relied on the erroneous instruction in his closing argument, the verdicts mixed up the provisions, and the abstract of judgment mixed up the provisions.  *See id.* at 999, 1001 & n.5; *see also Cain*, 870 F.3d at 1013 (discussing *Gautt*).

United States District Court
Northern District of California

*Sheppard v. Rees*, 909 F.2d 1234, 1236 n.2 (9th Cir. 1989) (citation omitted) ("An accused could be adequately notified of the nature and cause of the accusation by other means—for example, a complaint, an arrest warrant or a bill of particulars. Similarly, it is possible that an accused could become apprised of the particular charges during the course of a preliminary hearing.").

Here, the prosecution's proposed amendment of the information at the close of the prosecution's case did not violate Mr. Raygoza's right to notice of the charges against him. First, the defense had been on notice since the preliminary hearing of the incident that formed the basis for Count 1. The prosecution's trial evidence corresponded to the same incident as the one described in the preliminary examination. The evidence at both the preliminary hearing and the trial described that (a) Jane I was lying face up in bed when Mr. Raygoza climbed on top of her and rubbed his genital area up and down against her clothed body; (b) the incident had occurred while the family lived at the house on Del Monte before it burned down; and (c) there had been only one such incident of him rubbing against her while she was laying down. Because the substance of the offense described at the preliminary hearing and at the trial corresponded, it would have been clear to Mr. Raygoza and his defense counsel that the evidence at trial was referring to the same incident as that described in the preliminary hearing, despite the date inconsistency. *See Sheppard*, 909 F.2d at 1234 (observing that the preliminary hearing evidence might give adequate notice). Indeed, defense counsel's non-objection when the prosecution moved to amend at the end of the prosecution's case reflects that the defense had understood what incident was at issue for Count 1.

Second, the amendment to change the date range did not make a difference to the elements of the crime. A violation of California Penal Code section 288(a) requires that the child-victim be "under the age of 14 years." Here, Jane I was under age 14 using the date range that was in the pretrial amended information as well as in the amendment made at the close of the prosecution's case.

Third, the amendment did not change the particular Penal Code section under which Mr. Raygoza was charged: as with the amended information in place before trial, the amendment at the close of the prosecution's case charged him with a violation of California Penal Code section

15

288(a). *Cf. Cole*, 333 U.S. at 202 (due process violated where defendant was charged under one criminal code section but his conviction was upheld under a different criminal code section); *Gautt*, 489 F.3d at 998 (notice was improper where a defendant was charged under one section of the California Penal Code, but sentenced under another section).

Fourth, Mr. Raygoza does not show that he was misled in the preparation of his defense. He did not present an alibi defense; instead, his defense was to deny that the event ever took place. *See* CT 351. He argues that "defense counsel was unable to ascertain whether they did indeed live on Del Monte during that time period as [Jane I] testified." Docket No. 29 at 12; *see also* Docket No. 21-4 at 94. But he fails to show that questions about the particular residence in which the event took place had any real chance of undermining Jane I's credibility in her description of the abuse. Both Jane I and Mr. Raygoza lived in the same household for several years, since she was about six or seven years old until his arrest when she was 17 years old, and they had lived in several residences during that time. CT 1226-30. There is no suggestion that any other man lived in the household at any of their residential addresses, i.e., the defense would not be able to rule out Mr. Raygoza merely by showing the incident happened when they lived at another street address. Showing that Jane 1 had a faulty recollection of place details would have had little impact on her credibility regarding the details of the abuse incident. Mr. Raygoza did not assert an alibi defense, or any defense that depended on the date of the offense; rather, his defense was that the incident never happened. His inability to show that he was misled in the preparation of his defense also goes to the prejudice prong of the *Strickland* analysis: just as he does not show that he was misled in the preparation of his defense, he also does not show a reasonable probability that the result of the proceeding would have been different if an objection had been made.[5]

---

[5] The potential prejudice to the preparation of the defense is an important factor under both California law and the Federal Rules of Criminal Procedure, which generally allow an information to be amended up until the verdict under similar circumstances. *See* Cal. Penal Code § 1009 (court may order or permit amendment of an information "for any defect or insufficiency, at any stage of the proceedings, or if the defect in an indictment or information be one that cannot be remedied by amendment, may order . . . a new information to be filed"; "the trial or other proceeding shall continue as if the pleading had been originally filed as amended, unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable postponement, not longer than the ends of justice require, may be granted"); Fed. R. Crim. P. 7(e) ("unless an additional or different offense is charged or a substantial right of the defendant is

In sum, a Sixth Amendment-based objection to the proposed amendment to change the date range for the Count 1 charge would have had virtually no chance of succeeding because the defense had been aware since the preliminary hearing of the factual basis for Count 1, the proposed amendment did not change the Penal Code violation charged or affect any element of the crime, and the defense could not show any prejudice from the amendment to change the date.  *See, e.g., Lara v. Madden*, 2017 WL 7938464, at *10 (C. D. Cal. 2017), *report and recommendation adopted*, 2018 WL 1135636 (C. D. Cal. 2018) (rejecting right-to-notice claim where evidence at trial showed events occurred two years after date range alleged in information because date of child molestation was not required to be alleged in the information under any clearly established federal law from the U.S. Supreme Court or by state law, and there was no actual prejudice to defense because defense was aware of the relevant dates based on victim's police interview); *Mapuatuli v. Kernan*, 2017 WL 2490065, at*4 (C.D. Cal. 2017) (rejecting right-to-notice claim; the "minor modifications" to charging document to enlarge the date range during which molestations allegedly occurred "changed neither the types of charges against him nor any aspect of his defense"); *id.* ("the viability of Petitioner's it-never-happened/the-girls-are-liars defense was unaffected by any change to the dates in the charging document").

Mr. Raygoza fails to show that counsel engaged in deficient performance by not challenging the prosecution's request to amend the information to show a different date range for the crime alleged in Count 1.  Counsel had no duty to make a futile motion or objection, *see Juan H.*, 408 F.3d at 1273; *Rupe*, 93 F.3d at 1445, and Mr. Raygoza has not shown that objecting to the proposed amendment would have been anything but futile.  *See Morrison*, 981 F.2d 425, 429 (9th Cir. 1992) (because petitioner received adequate notice of charge through instructions proposed by prosecutor at the instructions conference and the evidence presented at trial, "appellate counsel would not have been successful in arguing inadequate notice of a felony-murder charge, [and] Morrison does not sustain his burden of proving ineffective assistance of counsel").  He thus has not shown ineffective assistance of counsel that provides cause to excuse his procedural default.

---

prejudiced, the court may permit an information to be amended at any time before the verdict or finding.").

*See Murray v. Carrier*, 477 U.S. at 488. Mr. Raygoza has not established cause or prejudice, or shown that the failure to consider the right-to-notice claim will result in a fundamental miscarriage of justice. Claim 1 therefore is procedurally defaulted and is now dismissed.

B.    CALCRIM No. 1110 Instructional Error Claim

Mr. Raygoza contends that his right to due process was violated when the jury was instructed with CALCRIM No. 1110. According to him, that instruction "removed the element that the act be committed willfully and lewdly from the jury's consideration" for the crime of lewd and lascivious conduct under California Penal Code section 288(a). Docket No. 2 at 11.

1.    State Court Proceedings

California Penal Code section 288(a) provides, in relevant part: "[A]ny person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony."

At Mr. Raygoza's trial, the jury was instructed with CALCRIM No. 1110, a pattern jury instruction, for the section 288(a) offense:

> The defendant is charged in Counts 1, 6, 7, 8, 9, and 10 with committing a lewd or lascivious act on a child under the age of 14 years in violation of Penal Code section 288(a).
>
> To prove that the defendant is guilty of this crime, the People must prove that:
>
> 1. The defendant willfully touched any part of a child's body either on the bare skin or through the clothing;
>
> 2. The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child;
>
> and
>
> 3. The child was under the age of 14 years at the time of the act.
>
> *The touching need not be done in a lewd or sexual manner.*
>
> Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the

18

law, hurt someone else, or gain any advantage.

Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or the child is not required.

It is not a defense that the child may have consented to the act.

CT 422 (CALCRIM No. 1110 (Spring 2012 ed.)) (emphasis added).

Mr. Raygoza argued on appeal (as he does in his federal habeas petition) that the italicized sentence in the jury instruction directly conflicted with the express statutory language defining the nature of the crime of lewd acts upon a child and therefore negated an essential element of the crime. He urged that the instruction was infirm because it allowed a conviction without finding an essential element of the offense, i.e., that the touching had been done lewdly. He further urged that the error was not harmless because some of the touching of Jane II and Jane III "was ambiguous in terms of the sexual or lewd nature of that contact." Docket No. 2 at 15.

The California Court of Appeal rejected Mr. Raygoza's arguments, concluding that the instruction was a correct statement of California law.

CALCRIM No. 1110, as presented to the jury below, correctly stated the law regarding the crime of lewd act upon a child. The language of CALCRIM No. 1110 comports with the statutory elements of the offense of lewd or lascivious act on a child. In discussing the definition of a "lewd" act under section 288, the Supreme Court has explained the "statute itself declares that to commit such an act 'wilfully and lewdly' means to do so 'with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires' of the persons involved." (*In re Smith* (1972) 7 Cal.3d 362, 365 (*Smith*).) The focus of the offense is on the intent of the perpetrator. "[T]he courts have long indicated that section 288 prohibits all forms of sexually motivated contact with an underage child. Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act. [Citation.] '[T]he purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done. . . . If [the] intent of the act, although it may have the outward appearance of innocence, is to arouse . . . the lust, the passion or the sexual desire of the perpetrator [or the child,] it stands condemned by the statute. . . .' [Citation.]" (*People v. Martinez* (1995) 11 Cal.4th 434, 444 (*Martinez*).)

The sentence to which appellant objects correctly states the law and makes it plain to the jury the physical act of touching involved need not be seen as lewd or offensive in and of itself. Even a physical touching that may appear innocent, if done with the requisite statutory intent, can be found to be a prohibited act under section 288. "As suggested in [*In re ] Smith*, we can only conclude that the

1    touching of an underage child is 'lewd or lascivious' and 'lewdly'
2    performed depending entirely upon the sexual motivation and intent
     with which it is committed." (*Martinez, supra*, 11 Cal.4th at p. 449;
     accord, *People v. Lopez* (1998) 19 Cal.4th 282, 289 [any touching of
3    a child under the age of 14 violates section 288, subdivision (a),
     even if the touching is outwardly innocuous and inoffensive, if it is
4    accompanied by the intent to arouse or gratify the sexual desires of
     either the perpetrator or the victim.]; see also *People v. Sigala*
5    (2011) 191 Cal.App.4th 695, 700–701 (*Sigala*) [holding same
     language in CALCRIM No. 1120 to be correct statement of law].)
6    In short, CALCRIM No. 1110 does not improperly negate a
     statutory element of section 288.

7    . . .

8    The crux of appellant's argument is that there needs to be a lewd
     touching, that is the act itself must be inherently lewd; *Martinez*
9    specifically rejected the argument section 288 is violated only if a
     defendant touches a child in an inherently lewd manner. (*People v.*
10   *Martinez, supra*, 11 Cal.4th at p. 442.)

11   In sum, CALCRIM No. 1110 as given in this case correctly stated
     the law and did not remove an element of the offense from the jury's
12   consideration.

13   Cal. Ct. App. Opinion at 11-14. The California Court of Appeal acknowledged that CALCRIM

14   No. 1110 was revised in 2013 (i.e., a year after Mr. Raygoza's trial) to delete the challenged

15   sentence, but that revision did "not alter [the appellate court's] assessment of the validity of

16   CALCRIM No. 1110 as given in this case. There has been no change in the well-established law

17   that a violation of section 288 does not require an explicitly sexual or inherently lewd touching."

18   Cal. Ct. App. Opinion at 13.

19       As the last reasoned decision from a state court, the California Court of Appeal's decision

20   is the decision to which 28 U.S.C. § 2254(d) is applied. *See Wilson*, 138 S. Ct. at 1192. Mr.

21   Raygoza is entitled to habeas relief only if the California Court of Appeal's decision was contrary

22   to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court,

23   or was based on an unreasonable determination of the facts in light of the evidence presented.

24       2.    Analysis

25       To obtain federal habeas relief for an error in the jury instructions, a petitioner must show

26   that the error "so infected the entire trial that the resulting conviction violates due process."

27   *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). A jury instruction violates due process if it fails to

28   give effect to the requirement that "the State must prove every element of the offense." *Middleton*

20

*v. McNeil*, 541 U.S. 433, 437 (2004). "'A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 378 (1990)). "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Middleton v. McNeil*, 541 U.S. at 437). Where an ambiguous or potentially defective instruction is at issue, the court must inquire whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S at 72 & n.4; *Boyde*, 494 U.S. at 380. If a constitutional error is found in the jury instructions, the federal habeas court also must determine whether that error was harmless by looking at the actual impact of the error. *Calderon v. Coleman*, 525 U.S. 141, 146-47 (1998).

The California Court of Appeal's rejection of Mr. Raygoza's instructional error claim was not contrary to, or an unreasonable application of, clearly established law from the U.S. Supreme Court. The appellate court determined that the instruction correctly stated California law that the manner of touching need not be inherently lewd or offensive, and that a violation occurs if the defendant commits the act with the intent of arousing, appealing to, or gratifying the lust or sexual desires of one or both of the persons involved. The California Court of Appeal rejected Mr. Raygoza's interpretation of the statute as a matter of state law. The California Court of Appeal's interpretation of California law is binding in this federal habeas action. *See Hicks v. Feiock*, 485 U.S. 624, 629-30 (1988). That is, this Court's analysis begins with an acceptance that the law of California is that a section 288(a) offense may occur even if the touching is not itself done in a lewd or sexual manner. This Court must accept that the law of California is that a section 288(a) offense occurs if the defendant commits the act with the intent of arousing, appealing to, or gratifying the lust or sexual desires of one or both of the persons involved. Here, those determinations of state law mean that the premise of Mr. Raygoza's challenge to the instruction is wrong. That is, contrary to Mr. Raygoza's assertion, the jury did not have to find that the touching had to be done in a lewd manner even though the section 288(a) offense makes criminal certain "lewd and lascivious acts."

Given that the touching need not be done in a lewd manner, Mr. Raygoza's due process claim fails because his premise is wrong. He contends that the jury instruction impermissibly negated the need for the jury to find the element that the touching was done lewdly, but California law does not have such an element for this crime. For the jury to find the defendant guilty, the instruction required the jury to find that (a) the defendant touched the under-14-year-old child's body, and (b) "[t]he defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child." CALCRIM No. 1110. That was enough under state law. As the state court of appeal reasonably determined, innocent conduct would not lead to a conviction because of the instruction's requirement that the "defendant commit[] the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child."

This Court concludes that there is no reasonable likelihood that the use of CALCRIM No. 1110 eliminated the need for the prosecutor to find all elements of the section 288(a) offense proven beyond a reasonable doubt. Several other district courts also have so held. *See, e.g., Fijar v. Madden*, 2016 WL 8737749, at *5-6 (C.D. Cal. 2016) (petitioner not entitled to federal habeas relief because CALCRIM No. 1110 was a correct statement of state law, as the state appellate court had determined that the offense did not require proof of touching in a lewd manner); *Franklin v. Davis*, 2015 WL 10583503, at *10-11 (C.D. Cal. 2015) (same); *Barnard v. Busby*, 2014 WL 1512031, at *18 (C.D. Cal. 2014) (CALCRIM No. 1110 "did not relieve the prosecution of its burden to prove every element of the charged offenses" because, contrary to petitioner's argument, state law has been interpreted not to require that the "form, manner or nature of the touching itself" be lewd); *Healan v. Gipson*, 2011 WL 3962084, at *7-8 (C.D. Cal. 2011) (CALCRIM No. 1110 did not relieve the prosecution of burden to prove every element of charged offense because, as state court had determined, § 288(a) did not require that the touching be done in a lewd manner).

Mr. Raygoza has not shown any instructional error, let alone one that "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). He is not entitled to the writ on this claim.

C.      CALCRIM No. 1191 Instructional Error Claim

Mr. Raygoza next contends that the use of a jury instruction regarding propensity evidence denied him his due process right to a presumption of innocence and proof beyond a reasonable doubt.

1.      State Court Proceedings

The jury was given the following instruction about using other charged offenses as propensity evidence:

> The People presented evidence that the defendant committed the crimes of Lewd Act Upon a Child and Child Molest.  These are crimes that are charged crimes in this case that are alleged in Counts One through Ten.  These crimes are defined for you in these instructions.
>
> If you decide that the Defendant committed a charged offense listed above, you may, but are not required, to conclude from that evidence that the defendant was disposed or inclined to have the requisite specific intent or mental state for the crimes charged in Counts One through Ten or the lesser crimes of Attempted Lewd Act Upon a Child or Attempted Child Molest, and based on that decision also conclude that the Defendant was likely to and did have the requisite specific intent or mental state for other charged offenses alleged in Counts One through Ten, or the lesser crimes of Attempted Lewd Act Upon a Child or Attempted Child Molest.
>
> If you conclude from that evidence that the defendant committed a charged offense, listed above, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of other charged offenses alleged in Counts One through Ten or the lesser crimes of Attempted Lewd Act Upon a Child or Attempted Child Molest.  The People must still prove each element and allegation beyond a reasonable doubt.
>
> Do not consider this evidence for any other purpose except for the limited purpose of determining the specific intent or mental state of the Defendant as to Counts One through Ten or the lesser crimes of Attempted Lewd Act Upon a Child or Attempted Child Molest.

CT 426 (CALCRIM 1191, as modified).

The California Court of Appeal rejected Mr. Raygoza's contention that this propensity instruction was improper under state law and federal constitutional law.  The court explained that the evidence covered by this instruction properly was admitted under California Evidence Code section 1108, which allows admission of evidence of a defendant's commission of another sexual

offense as evidence of the defendant's disposition to commit such crimes. The court also explained that state law allowed the use of current charged offenses, not just past crimes or uncharged offenses, as propensity evidence under section 1108. Cal. Ct. App. Opinion at 17, citing *People v. Villatoro*, 54 Cal. 4th 1152 (Cal. 2012). And the court observed that the California Supreme Court had rejected a due process challenge to an earlier version of the propensity instruction that was not materially different from CALCRIM 1191. *See* Cal. Ct. App. Opinion at 16, citing *People v. Reliford*, 29 Cal. 4th 1007 (Cal. 2003).

The state appellate court explained that the trial court had used a modified version of CALCRIM 1191, the pattern instruction on consideration of propensity evidence, "pursuant to this court's opinion in *People v. Wilson* (2008) 166 Cal. App. 4th 1034." which had approved a similar propensity instruction for other charged offenses. Cal. Ct. App. Opinion at 14. In considering the challenge to the instruction, the court looked at the "instructions as a whole and the entire record of trial, including the arguments of counsel." Cal. Ct. App. Opinion at 15. Here, that included CALCRIM No. 220, the general reasonable doubt and presumption-of-innocence instruction, that was given to the jury twice.[6] Cal. Ct. App Opinion at 15-16.

---

[6] The CALCRIM 220 instruction given at the trial stated:

> The fact that a criminal charge has been filed against the defendant[s] is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial.

> A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.

> Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

> In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.

24

Noting that the challenged instruction reiterated the general reasonable doubt standard, the California Court of Appeal explained that, under the challenged instruction "if, and only if, the jury found that defendant committed a charged offense could it consider that evidence as evidence of a propensity to harbor the requisite intent for other charged offenses. Thus, in effect, the instruction permitted the jury to consider only the evidence of acts which it unanimously agreed appellant committed as evidence of propensity to harbor the requisite specific intent." Cal. Ct. App. Opinion, at 16. The California Court of Appeal rejected the argument that it was necessary to expressly inform the jury that the People must prove every element of a crime beyond a reasonable doubt before that crime may be considered as propensity evidence with respect to another crime. Cal. Ct. App. Opinion at 18.

> Plainly, the instructions given in this case, when taken together, informed the jury that in deciding if appellant committed a charged offense they had to find that he committed that offense beyond a reasonable doubt. CALCRIM No. 220, which the court gave here twice, once before the jury received any evidence and once at the close of all the evidence before the jury started to deliberate, so informed them. The modified version of CALCRIM No. 1911 reinforced this by informing the jury that the "People must still prove each element of every charge beyond a reasonable doubt." There was no risk the jury would apply an impermissibly low standard of proof.

Cal. Ct. App. Opinion at 18-19.

2.    Analysis

It is beyond dispute that the Fourteenth Amendment's Due Process Clause requires that a defendant be presumed innocent until proven guilty, that he may only be convicted upon a showing of proof beyond a reasonable doubt, and that the jury must be properly instructed that a defendant is presumed innocent until proven guilty beyond a reasonable doubt. *See Gibson v. Ortiz*, 387 F.3d 812, 820 (9th Cir. 2004), *overruled on other grounds by Byrd v. Lewis*, 566 F.3d 855 (9th Cir. 2009) (citing *In re Winship*, 397 U.S. 358, 364 (1970)). "Any jury instruction that 'reduce[s] the level of proof necessary for the Government to carry its burden . . . is plainly inconsistent with the constitutionally rooted presumption of innocence.'" *Id.* (quoting *Cool v.*

---

CT 403 (CALCRIM 220).

*United States*, 409 U.S. 100, 104 (1972) (alteration and omission in original).

As mentioned in Section B.2., above, to obtain federal habeas relief for an error in the jury instructions, a petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. The reviewing court does not look at the instruction in isolation and instead views it "'in the context of the overall charge'" to the jury. *Middleton*, 541 U.S. at 437. Where an ambiguous or potentially defective instruction is at issue, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S at 72 & n.4. Even if there is a constitutional error in the instructions, habeas relief is not available unless the error had a substantial and injurious effect or influence in determining the jury's verdict. *Calderon v. Coleman*, 525 U.S. 141, 146-47 (1998); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The California Court of Appeal's rejection of Mr. Raygoza's challenge to the propensity instruction given at his trial was not contrary to, or an unreasonable application of, clearly established law from the U.S. Supreme Court. This Court must accept as correct the California Court of Appeal's state law determination that other bad acts, including currently charged offenses, may be used as propensity evidence in California. *See Hicks*, 485 U.S. at 629-30 (state court's interpretation of state law is binding on federal habeas court). The critical question here is whether the instruction undermined the presumption of innocence or lowered the prosecution's burden to prove guilt beyond a reasonable doubt. The California Court of Appeal's conclusion that the instruction did not do so was a reasonable one.

The jury instruction given at Mr. Raygoza's trial did not incorrectly describe the burden of proof or permit conviction upon a standard less than proof beyond a reasonable doubt of every element of the charged crimes. The CALCRIM 1191 instruction included important cautionary language that the propensity evidence was not alone enough to prove the required mental state or guilt: "[i]f you conclude from that evidence that the defendant committed a charged offense, listed above, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty." CT 426. The CALCRIM 1191 instruction also reiterated the prosecutor's need to prove each element beyond doubt: "The People

26

must still prove each element and allegation beyond a reasonable doubt." CT 426. This was in addition to the full reasonable-doubt instruction that had been given to the jury at the beginning of the case and as part of the final jury instructions. See CT 403.

The CALCRIM 1191 instruction given at Mr. Raygoza's trial also did not mention a preponderance of the evidence standard or leave the jury guessing as to whether guilt of the charge under consideration could rest solely on the propensity evidence – problems that plagued an earlier version of California's propensity instructions. *See Gibson v. Ortiz*, 387 F.3d 812 (9th Cir. 2004). There, the jury was instructed with the pre-1999 version of CALJIC 2.50.01 which did not caution the jury that the inference it could draw from the prior offense was not enough to prove guilt on the charged crime beyond a reasonable doubt. The problem in *Gibson* was compounded by the use of a modified version of CALJIC 2.50.1 that stated the preponderance of the evidence standard as the burden of proof for prior offenses. The "interplay of the two instructions allowed the jury to find that Gibson committed the uncharged sexual offenses by a preponderance of the evidence and thus to infer that he had committed the *charged* acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence." *Id.* at 822. Those instructions, carefully followed by the jury, would allow Gibson's conviction based on a finding made on the unconstitutionally low preponderance of the evidence standard. In light on the instructions given herein, no such risk obtains in this case.

In *Schultz v. Tilton*, 659 F.3d 941 (9th Cir. 2011), the Ninth Circuit upheld a newer version of California's propensity instruction that had some significant improvements over the version examined in *Gibson*. Unlike the instructions challenged in *Gibson*, the instruction challenged in *Schultz* did caution the jury that the propensity evidence "is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes," and did caution that a propensity inference "is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime." *Schultz*, 659 F.3d at 944. This revised instruction "was unambiguous and made clear that Schultz could be convicted only if the evidence as a whole 'proved [him] guilty beyond a reasonable doubt of the charged crime.'" *Id.* at 945 (alteration in original). The instruction was

constitutionally sufficient.

The instructions at Mr. Raygoza's trial --unlike the instructions in *Gibson* and like the instruction in *Schultz* -- would not, if followed by the jury, permit his conviction based on anything less than proof beyond a reasonable doubt of all elements of the crimes charged.   Unlike the instructions in *Gibson*, there was no confusing mention of the preponderance-of-the-evidence standard.  Like the instruction in *Schultz*, Mr. Raygoza's instruction specifically cautioned the jury that the propensity evidence alone was insufficient to convict, that the propensity evidence was just one factor along with other evidence to consider, and that the prosecution still had to prove each element beyond a reasonable doubt.  The instructions in Mr. Raygoza's case did not have potential to mislead the jury about the proper use of the propensity evidence.  *Cf. Collins v. Carey*, 312 F. App'x 74, 76 (9th Cir. 2009) (instruction mentioned preponderance-of-evidence standard for domestic violence propensity evidence but also cautioned that the propensity evidence alone was not to prove guilt beyond a reasonable doubt; "[r]ead in conjunction with the instructions on proof beyond a reasonable doubt, it was not unreasonable under AEDPA for the California courts to find no due process violation").

It is true the CALCRIM 1191 instruction given at Mr. Raygoza's trial did not explicitly state that the jury had to find proof beyond a reasonable doubt that Mr. Raygoza committed an offense before the jury could use the commission of that offense as propensity evidence that he had the requisite mental state for another offense, but the failure to make that point explicitly did not create a "reasonable likelihood," *Estelle*, 502 U.S. at 72 & n.4, that the jury applied the instruction to find Mr. Raygoza guilty on less than proof beyond a reasonable doubt of the latter offense.  A "meager 'possibility'" that the jury misapplied the instruction is not enough.  *Kansas v. Carr*, 136 S. Ct. 633, 643 (2016).  As the California Court of Appeal reasonably determined, the jury could consider evidence Mr. Raygoza committed a charged offense as "evidence of a propensity to harbor the requisite intent for other charged offenses" "if, and only if, the jury found that [he] committed a charged offense." Cal. Ct. App. Opinion at 16.  And both the CALCRIM 1191 and CALCRIM 220 instructions given made it clear that the jury could not find Mr. Raygoza had committed a charged offense unless it found proof beyond a reasonable doubt.  It was not

28

unreasonable for the state appellate court to conclude that, from these instructions, the jury would have understood that, before it could use a charged offense as propensity evidence for another charged offense, the jury had to find, beyond a reasonable doubt, that Mr. Raygoza committed the first charged offense.

The parties' closing arguments reinforced the key points in the CALCRIM 1191 instruction. The prosecutor read CALCRIM 1191 and then said, "What does all that mean? It means basically" that if, for example, the jurors found Mr. Raygoza guilty of a lewd act on Jane II, "you can take that fact in determining whether he had the specific intent when he was touching [Jane I and Jane III]." RT 2130-31. Defense counsel reiterated that jurors could not use propensity evidence as the sole evidence to establish guilt: propensity evidence cannot "make[] up for the fact that I don't think he had the sexual intent here. It's not how propensity works. You can use it as one factor, but you can't ignore the other doubt you have." RT 2192.

When viewed in conjunction with the reasonable doubt instruction, the CALCRIM 1191 instruction given at Mr. Raygoza's trial made clear that even if the jury found that he had committed one lewd act and drew the inference from that evidence that he was disposed to have a lewd intent for another lewd act, that alone was *not* sufficient to prove beyond a reasonable doubt that he committed the latter offense. The California Court of Appeal reasonably determined that there was no reasonable likelihood that the jury applied the challenged instruction to convict Mr. Raygoza based on any standard below proof beyond a reasonable doubt. He is not entitled to the writ on his claim that the CALCRIM 1191 jury instruction violated his right to due process.

D.     Admission Of Evidence Of Prior Violent Acts

Mr. Raygoza next contends that his right to due process was violated when the trial court admitted evidence that he had been violent with the victims and their mother. None of this violence was committed simultaneously with any of the lewd acts.

1.     State Court Proceedings

During in limine proceedings, defense counsel moved to exclude evidence regarding Mr. Raygoza's physical abuse of the victims and their mother. The trial court ruled that, if a proper foundation was laid, the evidence of physical abuse was admissible because it could "show the

child was fearful of the defendant or may go to the child not reporting or the child consenting or putting up with certain conduct." RT 917. When the issue came up again during witness testimony, the court ruled that an adequate foundation had been laid, and the evidence was admissible as relevant to explain the witness' "reactions and responses to the defendant based upon his conduct," and "to explain her reporting or timely reporting or lack of timely reporting." RT 1316. The trial court also found that the relevance of the evidence outweighed the prejudicial effect, noting "that details were not gone into by the People." RT 1316. Thus, at trial:

> Jane I testified that she was afraid of appellant because when she was 12 appellant had almost killed her mother leaving bruises on her mother's neck and face. Further, Jane I said that she had seen appellant hit her sisters. Jane II testified that appellant would hit her and her siblings; when he was mad appellant would hit them with a belt. Jane III testified that on one occasion appellant hit her because his soccer team lost a game; and when she was four, appellant hit her brother and her sister. When she got mad at appellant, appellant hit her. The children's mother testified that appellant hit her nose with his head.

Cal. Ct. App. Opinion at 19.

On appeal, the California Court of Appeal rejected Mr. Raygoza's contentions that the admission of the evidence of physical abuse was erroneous under California Evidence Code section 352 and violated his federal right to due process. The state appellate court agreed with Mr. Raygoza's assertion that the victims' state of mind and delayed reporting were not elements of the section 288(a) offense, but found the observation unhelpful because the violence evidence was relevant for a different purpose.

> [E]vidence of appellant's violent acts that the girls had witnessed or of which they had knowledge had a tendency in reason to establish that they genuinely feared appellant, which in turn had a tendency in reason to explain their delayed reporting to someone outside the family and, undoubtedly, was relevant to their credibility. (See Evid.Code, §§ 210, 780, Cal. Law Revision Com. com., 29 B, Pt. 2 West's Ann. Evid.Code (1995 ed.) foll. § 780, p. 586; see also § 351.) Such evidence was highly relevant with respect to the girls' credibility, a key issue at trial, since the delay in reporting to anyone outside their family could be a basis for attacking their credibility in claiming that appellant had sexually molested them.

> Appellant maintains that the evidence ruled admissible was "unduly prejudicial." For purposes of Evidence Code section 352, we reiterate that "'prejudicial' is not synonymous with 'damaging,' but

> refers instead to evidence that '"uniquely tends to evoke an emotional bias against defendant"' without regard to its relevance on material issues. [Citations.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.) "In applying this statute we evaluate the 'risk of *"undue"* prejudice, that is, '"evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues,'" not the prejudice "that naturally flows from relevant, highly probative evidence."' [Citations.]" (*People v. Salcido* (2008) 44 Cal.4th 93, 148.)
>
> Compared to the lengthy testimony detailing appellant's sexual molestation of his stepdaughters, the testimony regarding appellant's physical abuse was brief. Any prejudice from the evidence was not undue, but was merely the type that naturally flows from the nature of appellant's conduct. As such, the trial court committed no error in admitting the evidence. (*cf. People v. Harris* (1998) 60 Cal.App.4th 727, 737 [painting a person faithfully is not, of itself, unfair].)

Cal. Ct. App. Opinion, pp. 21-22. The appellate court summarily rejected Mr. Raygoza's due process claim. *Id.* at 22.

As the last reasoned decision from a state court, the California Court of Appeal's decision is the decision to which 28 U.S.C. § 2254(d) is applied. *See Wilson*, 138 S. Ct. at 1192. Mr. Raygoza is entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.

### 2. Analysis

The United States Supreme Court has never held that the introduction of propensity or other allegedly prejudicial evidence violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 68-70 (1991); *id.* at 75 n.5 ("we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").

In *Estelle v. McGuire*, the defendant was on trial for murder of his infant daughter after she was brought to a hospital and died from numerous injuries suggestive of recent child abuse. Defendant told police the injuries were accidental. Evidence was admitted at trial that the coroner discovered during the autopsy older partially healed injuries that had occurred six to seven weeks before the child's death. *Id.* at 65. Evidence of the older injuries was introduced to prove "battered child syndrome," which "exists when a child has sustained repeated and/or serious

United States District Court
Northern District of California

injuries by nonaccidental means." *Id.* at 66. The state appellate court had held that the proof of prior injuries tending to establish battered child syndrome was proper under California law. *Id.* In federal habeas proceedings, the Ninth Circuit found a due process violation based in part on its determination that the evidence was improperly admitted under state law. *Id.* at 66-67. The U.S. Supreme Court first held that the Ninth Circuit had erred in inquiring whether the evidence was properly admitted under state law because "'federal habeas corpus relief does not lie for errors of state law.'" *Id.* at 67. The Supreme Court then explained:

> The evidence of battered child syndrome was relevant to show intent, and nothing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant evidence simply because the defense chooses not to contest the point. [¶] Concluding, as we do, that the prior injury evidence was relevant to an issue in the case, we need not explore further the apparent assumption of the Court of Appeals that it is a violation of the due process guaranteed by the Fourteenth Amendment for evidence that is not relevant to be received in a criminal trial. We hold that McGuire's due process rights were not violated by the admission of the evidence. *See Spencer v. Texas*, 385 U.S. 554, 563–564, 87 S.Ct. 648, 653–654, 17 L.Ed.2d 606 (1967) ("Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial . . . . But it has never been thought that such cases establish this Court as a rulemaking organ for the promulgation of state rules of criminal procedure").

*Estelle v. McGuire*, 502 U.S. at 70 (omission in original).

The cited case, *Spencer v. Texas*, 385 U.S. at 563, held that the admission of evidence of prior convictions did not violate due process. The Supreme Court explained in *Spencer* that, although there may have been other, perhaps better, ways to adjudicate the existence of prior convictions (e.g., a separate trial on the priors after the trial on the current substantive offense resulted in a guilty verdict), Texas' use of prior crimes evidence in a "one-stage recidivist trial" did not violate due process. *Id.* at 563-64. "In the face of the legitimate state purpose and the long-standing and widespread use that attend the procedure under attack here, we find it impossible to say that because of the possibility of some collateral prejudice the Texas procedure is rendered unconstitutional under the Due Process Clause as it has been interpreted and applied in our past cases." *Id.* at 564.

*Estelle v. McGuire* also cited to *Lisenba v. California*, 314 U.S. 219, 228 (1941), in

support of the conclusion that the introduction of the battered child syndrome evidence did not so infuse the trial with unfairness as to deny due process of law. *See Estelle v. McGuire*, 502 U.S. at 75. In *Lisenba*, the Supreme Court rejected a claim that the admission of inflammatory evidence violated the defendant's due process rights. The evidence at issue in *Lisenba* was live rattlesnakes and testimony about them to show they had been used by the defendant to murder his wife. "We do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence. We cannot hold, as petitioner urges, that the introduction and identification of the snakes so infused the trial with unfairness as to deny due process of law. The fact that evidence admitted as relevant by a court is shocking to the sensibilities of those in the courtroom cannot, for that reason alone, render its reception a violation of due process." *Lisenba*, 314 U.S. at 228-29.

These three Supreme Court cases declined to hold that the admission of prejudicial or propensity evidence violates the defendant's due process rights. No Supreme Court cases since *Estelle v. McGuire* have undermined the holdings in these three cases. In other words, there is no Supreme Court holding that the admission of prejudicial or propensity evidence violates due process.

The Supreme Court has, however, established a general principle of "fundamental fairness," i.e., evidence that "is so extremely unfair that its admission violates 'fundamental conceptions of justice'" may violate due process. *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977) (due process was not violated by admission of evidence to identify perpetrator and link him to another perpetrator even though the evidence also was related to crime of which defendant had been acquitted)). Thus, the court may consider whether the evidence was "so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Id.*

In this circuit, the admission of prejudicial evidence may make a trial fundamentally unfair and violate due process "[o]nly if there are no permissible inferences the jury may draw from the evidence." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). "Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must

rely on the jury to sort them out in light of the court's instructions. Only if there are

*no* permissible inferences the jury may draw from the evidence can its admission violate due

process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'

Only under such circumstances can it be inferred that the jury must have used the evidence for an

improper purpose." *Jammal*, 926 F.2d at 920 (internal citation and footnote omitted).[7]

Here, the California Court of Appeal reasonably could have determined that the admission

of evidence of Mr. Raygoza's physical abuse of the victims and their mother did not meet the very

demanding standard of being so extremely unfair that its admission violated fundamental

conceptions of justice. There were permissible inferences about the credibility of the victims that

could be drawn from the evidence.

The evidence was relevant because it aided the jury in assessing the three victims'

credibility, as the California Court of Appeal explained in discussing the state law claims. Each

victim had delayed in reporting the sexual abuse by Mr. Raygoza, and each testified that Mr.

Raygoza had physically abused the girl, her sisters or her mother. And each stated that Mr.

Raygoza's physical abuse contributed to her fear of him.

---

[7] In *Jammal*, the police found a gun, $47,000 and drugs in the trunk of Jammal's stolen car when they arrested Willis, who had stolen Jammal's car; 18 months later, the police found $135,000 (but no drugs) in the trunk of Jammal's car when they arrested Jammal. At trial, Willis said he had no idea the drugs and money were in the trunk of Jammal's stolen car until police opened it. The prosecution urged the jury to infer that both the drugs and the $47,000 found in the trunk of Jammal's car when Willis was arrested belonged to Jammal since Jammal later was arrested also with a large stash of cash in his trunk. Jammal unsuccessfully objected that this evidence effectively branded him a drug dealer and was therefore inadmissible character evidence. The Ninth Circuit explained that state law evidence rules were beside the point in a federal habeas proceeding and any problem in the jury inferring that Jammal had put the $47,000 and drugs in the car earlier (even if impermissible under state law) was not a constitutional problem because the inference that Jammal had put both the $47,000 and drugs in the trunk on an earlier occasion was a "rational inference" the jury could draw from the evidence that he was caught with $135,000 in his trunk. *Jammal*, 926 F.2d at 920.

*Jammal* is one of the few cases that gives any guidance as to what might amount to the introduction of evidence that might amount to fundamental unfairness. The Ninth Circuit continues to use the *Jammal* "permissible inference" test in habeas cases governed by the AEDPA. *See, e.g., Noel v. Lewis*, 605 F. App'x 606, 608 (9th Cir. 2015) (admission of gang evidence did not violate due process); *Lundin v. Kernan*, 583 F. App'x 686, 687 (9th Cir. 2014) (citing *Jammal* and concluding that admission of graffiti evidence did not violate due process because there were permissible inferences to be drawn); *Gonzalez v. Knowles*, 515 F.3d 1006, 1011 (9th Cir. 2008) (citing *Jammal* and concluding that evidence of prior bad acts did not violate due process).

The evidence of Mr. Raygoza's physical abuse bolstered each victim's credibility because it tended to show that the delay in reporting did not mean that the sexual abuse had not occurred. The physical abuse information would provide an answer for jurors who were skeptical as to why a victim had put up with the sexual abuse and had waited so long to report it if sexual abuse that bad was occurring. By learning that Mr. Raygoza beat the victims and their mother when angry, the jury might be more understanding of the victims' reluctance to report him to authorities and give greater weight to their reports of abuse. The evidence let the jury learn the facts that would enable them to evaluate the source of the victims' claimed fear of Mr. Raygoza and its effect on the witness. *Cf. United States v. Abel,* 469 U.S. 45, 52 (1984) ("Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."); *e.g., id.* (defendant's and witness' membership in a prison gang supported the inference that witness' testimony "was slanted or perhaps fabricated in respondent's favor"); *Jones v. McGrath,* 276 F. App'x 593, 593 (9th Cir. 2008) ("[Petitioner] contends that the trial court violated his due process rights by admitting evidence that a prosecution witness feared that [Petitioner] would have him killed if he testified. . . . Because testimony about the witness' fear of [Petitioner] is relevant under *Abel*, we cannot agree with [Petitioner's] contention that the state court decision was 'contrary to, or involved an unreasonable application of' Supreme Court precedent.").

It is true the trial court did not give a limiting instruction to the jury that the physical-abuse evidence could only be used for the purpose of evaluating the witnesses' credibility. But this does not entitle Mr. Raygoza to relief; so long as there was a permissible inference that could be drawn from the evidence – i.e., that the victims' delayed reporting of the sexual abuse was not because the reports were fabricated but instead was due to their fear of Mr. Raygoza based on his past acts of violence toward them and their mother – no federal constitutional claim is clearly stated. *See Jammal*, 926 F.2d at 920 (admission of evidence violates due process only if there are no permissible inferences the jury may draw from that evidence).

Even if a constitutional claim could be stated, habeas relief would not be warranted because, as discussed above, the United States Supreme Court has never held that the introduction of propensity or other allegedly prejudicial evidence violates due process. *See generally Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (denying habeas relief upon finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Federal law under § 2254(d)); *Alberni v. McDaniel*, 458 F.3d 860, 865 (9th Cir. 2006) (denying habeas relief on claim that due process was violated by admission of evidence of defendant's past violent actions and explosive temper to show propensity due to *Estelle v. McGuire's* reservation of the question whether propensity evidence violates due process); *Moses v. Payne*, 555 F.3d 742, 760 (9th Cir. 2009) (holding that, where balancing test for excluding evidence is creation of Ninth Circuit law and Supreme Court has not directly considered whether trial court's exercise of discretion to exclude evidence violated defendants' constitutional right to present evidence, state court's failure to use Ninth Circuit's balancing test is not contrary to or an unreasonable application of clearly established Supreme Court precedent).

Further, the Court notes that the physical-abuse evidence was not central to the trial. The prosecutor did not argue that Mr. Raygoza had a bad character or had a propensity to commit crimes because he had physically abused the victims and their mother. Instead, the prosecutor's mention of the physical abuse was only to show how it was related to the victims' credibility about their reports of sexual abuse. The prosecutor alluded to the physical abuse to explain why the victims were afraid of Mr. Raygoza, endured his sexual abuse, and delayed in reporting the sexual abuse.[8]

---

[8] The prosecutor mentioned the physical abuse a few times in his closing argument. In discussing the testimony of Jane I, the prosecutor argued: "So you had fear of physical abuse, you had fear that he would start going farther than that, okay, in a sexual way. Fear of further sexual abuse, fear of her mom getting hurt. All of this helps you understand why the situation was what it was." RT 2154. In discussing the testimony of Jane II, the prosecutor argued: "[Jane II] gave you evidence of her fear of why this was occurring. How is it possible? How can this occur in any household? Well, people are scared." RT 2170-71.

The prosecutor also argued that the victims' mother was an enabler, whose inaction allowed the sexual abuse to continue: "That's why things like this happen. People don't react.

The California Court of Appeal reasonably could have concluded there was no due process violation using the same reasoning it used to reject the state law claims: the jury could use the physical abuse evidence to assess the victims' credibility and state of mind at the time they spoke to the police and investigator as well as at trial.  The jury could draw the inference that the victims were being truthful in their testimony that Mr. Raygoza had sexually abused them, even though they did not report that abuse at the moment it happened and even though their descriptions of some details of the sexual abuse incidents had some inconsistencies with their statements to the police and investigator about the same incidents.  Because this inference is permissible, the state appellate court did not unreasonably apply Supreme Court authorities in holding that the admission of the evidence did not violate due process.  *See Jammal*, 926 F.2d at 920.

"[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  Bearing in mind the extremely general nature of the Supreme Court's articulation of a principle of "fundamental fairness" – i.e., evidence that "is so extremely unfair that its admission violates 'fundamental conceptions of justice'" may violate due process, *see Dowling*, 493 U.S. at 352 – the California Court of Appeal's rejection of Mr. Raygoza's due process claim was not contrary to or an unreasonable application of federal law clearly established by the Supreme Court as discussed above.  *See generally Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (denying writ because, although Supreme Court "has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." (internal citation omitted)).  Mr. Raygoza is not entitled

People don't do anything.  And that describes [the mother].  At that time she just did not have the tools to protect her children.  And you know why."  RT 2177.  The victims' mother had testified that Mr. Raygoza had taken away her cell phone so she could not contact police, RT 1607, 1611-12, had hit her in the nose three times when she confronted him about the girls' accusations that he was touching them inappropriately, RT 1569-70, and had refused to leave the home, RT 1569.  The victims' mother also had testified that she was using drugs during the time period 2005-2009.  RT 1607-08.

1  to the writ on this claim.

2  E.    Prosecutorial Misconduct Claim

3      Mr. Raygoza contends that the prosecutor vouched for the truthfulness of the victims and

4  that this vouching amounted to prosecutorial misconduct in violation of his right to due process.

5      1.    Background

6      Three statements made by the prosecutor in his closing argument are challenged.  First, the

7  prosecutor argued:  "There's so much more evidence in this case to make [the] conclusion [that

8  Mr. Raygoza is guilty].  But that ultimately in the end is your basic conclusion, because [Jane I]

9  has been telling the truth."  RT 2134.  Defense counsel's objection was overruled.  RT 2134.

10 Second, the prosecutor argued:  "[Jane I]'s telling you she's being touched. She's telling the truth.

11 You have to determine whether she's telling the truth or not.  You get a credibility instruction.

12 And there's absolutely no reason to disbelieve her."  RT 2139.  Defense counsel did not object

13 when this statement was made.  Third, while referring to statements Mr. Raygoza made during a

14 police interview, the prosecutor argued:  "The value in this [i.e., the statement by Mr. Raygoza] is

15 it leaves you with an abiding conviction that everything is true.  That the girls aren't making this

16 up."  RT 2152.  Defense counsel did not object to this argument.

17     The California Court of Appeal rejected Mr. Raygoza's prosecutorial misconduct claim,

18 finding that the comments did not amount to vouching.

19
20          A prosecutor's misconduct violates the Fourteenth Amendment to
            the United States Constitution when it "infects the trial with such
            unfairness as to make the conviction a denial of due process."
21          (*People v. Morales* (2001) 25 Cal.4th 34, 44; accord, *Darden v.
            Wainwright* (1986) 477 U.S. 168, 181; *Donnelly v. DeChristoforo*
22          (1974) 416 U.S. 637, 643.)  In other words, the misconduct must be
            "of sufficient significance to result in the denial of the defendant's
            right to a fair trial."  (*United States v. Agurs* (1976) 427 U.S. 97,
23          108.)  A prosecutor's misconduct that does not render a trial
            fundamentally unfair nevertheless violates California law if it
24          involves "the use of deceptive or reprehensible methods to attempt
            to persuade either the court or the jury."  (*People v. Strickland*
25          (1974) 11 Cal.3d 946, 955; accord, *People v. Farnam* (2002) 28
            Cal.4th 107, 167.)

26
27          "A prosecutor may comment upon the credibility of witnesses based
            on facts contained in the record, and any reasonable inferences that
            can be drawn from them, but may not vouch for the credibility of a
28          witness based on personal belief or by referring to evidence outside

the record. [Citations.]" (*People v. Martinez* (2010) 47 Cal.4th 911, 958.) To put it another way, "[p]rosecutorial assurances, based on the record, regarding the apparent honesty or reliability of prosecution witnesses, cannot be characterized as improper 'vouching,' which usually involves an attempt to bolster a witness by reference to facts outside the record. [Citation.]" (*People v. Medina* (1995) 11 Cal.4th 694, 757.) . . .

Before each of the three statements that appellant characterizes as vouching, the prosecutor outlined specific evidence that the jury had heard. Before the first statement the prosecution had reviewed excerpts of Jane I's testimony and told the jury that the law permitted the jury to convict on the testimony of one witness. Immediately thereafter, the prosecutor told the jury, "Keep in mind there's other evidence. But that's your basic analysis. That's how you determine whether somebody's guilty of a charge or not. And we haven't gone over [appellant's] statement. We haven't gone over [Jane II]'s testimony, [Jane I]'s [sic] testimony, Eric's, [mother's]. There's so much more evidence in this case to make that conclusion." As to the second statement, the prosecutor replayed a portion of the videotaped conversation where appellant admitted to a detective that he touched Jane I on the thigh while at a hotel. Immediately before the statement to which appellant objects, the prosecutor commented, "So there's touching going on. Corroborates [Jane I]'s testimony. Defendant tells you that she's being touched." As to the third statement, the prosecutor replayed another clip from the same videotaped conversation in which appellant described two separate occasions where he touched Jane I's buttocks. The prosecutor explained the significance of the evidence as being "the value of the defendant's statement is not necessarily—he's not necessarily coming clean completely clean to Detective Bravo. The value in this is it leaves you with an abiding conviction that everything is true."

Rather than vouching for the witnesses' truthfulness based on his personal belief, in all three instances the prosecutor was pointing out the strength of the corroborating evidence from which the jury could be sure that the witnesses were telling the truth. We find no prosecutorial misconduct. (*Bonilla, supra*, 41 Cal.4th at p. 337.)

Cal. Ct. App. Opinion at 22-25.

As the last reasoned decision from a state court, the California Court of Appeal's decision is the decision to which 28 U.S.C. § 2254(d) is applied. *See Wilson*, 138 S. Ct. at 1192. Mr. Raygoza is entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.

2. <u>Analysis</u>

The appropriate standard of review for a prosecutorial misconduct claim in a federal

habeas corpus action is the narrow one of due process and not the broad exercise of supervisory power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("it 'is not enough that the prosecutors' remarks were undesirable or even universally condemned'"). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)); *see Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). Under *Darden*, the inquiry is whether the prosecutor's remarks were improper and, if so, whether the comments infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005). The "*Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (omission in original) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993).

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18–19 (1985). The vouching in *Young* consisted of numerous instances of the prosecutor expressing his personal opinion during closing argument. *See id.* at 5 (prosecutor argued: "'I think [defense counsel] said that not anyone sitting at this table thinks that Mr. Young intended to defraud Apco. Well, I was sitting there and I think he was.'"); *id.* (in response to defense counsel's statement that company was not defrauded, prosecutor argued: "'I don't know what you call that, I call it fraud. . . . I think it's a fraud.'"); *id.* (after recapping some

of defendant's conduct, prosecutor argued: "'I don't know whether you call it honor and integrity. I don't call it that, [defense counsel] does.'"). *Young* held the prosecutor's remarks were error but did not constitute plain error so as to require reversal. *Id.* at 20.[9] *See also Hein v. Sullivan*, 601 F.3d 897, 913 (9th Cir. 2010) (denying habeas relief; prosecutor vouched for witness' credibility when he described the witness as a "'very powerful and credible witness,'" who was "'painfully honest,'" was "'the model of a perfect witness,'" was "'so honest about it,'" and possessed "the kind of integrity that our system would like to see.'"); *United States v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005) (reversing conviction; prosecutor clearly urging that the existence of legal and professional repercussions served to ensure the credibility of the officers' testimony "suffices for the statement to be considered improper as vouching based upon matters outside the record"); *id.* at 1147 (prosecutor's argument that defense witness' original statements were truthful and current testimony "'about being threatened I don't believe is truthful, ladies and gentlemen,'" was improper vouching because it went beyond a reasonable inference from the evidence and placed the prestige of the government behind the witness by providing personal assurances of a witness's veracity"); *United States v. Necoechea*, 986 F.2d 1273, 1278-79 (9th Cir. 1993) (prosecutor's reference to provision of witness' plea agreement that required witness "to testify truthfully" was vouching in that it mildly implied "that the government can guarantee [the witness'] truthfulness" and prosecutor's closing argument that referred to matters (i.e., the resolution of other cases) outside the record was vouching, but the errors did not amount to plain error requiring reversal when considered in light of the jury instruction and the context of the trial). *But see, e.g.,̦ Necoechea*, 986 F.2d at 1279 (prosecutor's argument, "I submit to you, ladies and gentlemen, that [witness is] not lying. I submit to you that she's telling the truth" did not amount to vouching and was instead "simply an inference from evidence in the record. . . . These statements do not imply that the government is assuring [this witness'] veracity, and do not reflect

---

[9] *Young* was decided under the Federal Rules of Criminal Procedure, rather than under federal constitutional law, *see Young*, 470 U.S. at 6-7, 15, but the standard used was comparable to the *Darden* standard for a due process prosecutorial misconduct claim. *Young* determined that the prosecutor's remarks did not amount to plain error because "the prosecutor's statements, although inappropriate and amounting to error, were not such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *Young,* 470 U.S. at 16.

the prosecutor's personal beliefs.").

Although vouching is frowned upon, "[a]t the same time, [courts] have recognized that prosecutors must have reasonable latitude to fashion closing arguments, and thus can argue reasonable inferences based on the evidence, including that one of the two sides is lying." *Necoechea*, 986 F.2d at 1276.

The California Court of Appeal's rejection of Mr. Raygoza's prosecutorial misconduct claim was not contrary to, or an unreasonable application of, clearly established law from the U.S. Supreme Court. The state appellate court cited *Darden*, identified the correct standard for evaluating a claim of prosecutorial misconduct, and reasonably applied that standard. It was not an unreasonable application of *Darden* or *Young* for the California Court of Appeal to conclude that there was no vouching because each of the three challenged statements was a fair comment on specific evidence that the prosecutor had just outlined.

Viewed in context, each challenged statement reasonably could be seen as an effort to urge a reasonable inference that the other trial evidence corroborated and showed the truthfulness of the witness' statement. Just before making the first challenged statement (i.e., that Jane I "has been telling the truth"), the prosecutor had (a) quoted at length Jane I's testimony about the incident in which Mr. Raygoza had climbed atop her and moved his body up and down against her body, and (b) applied the law to those facts to argue that the incident was a sexual event. RT 2131-34. The prosecutor continued:

> Your conclusion should be defendant is guilty of committing a lewd act on a child 13 or under, she was 11, against [Jane I] based on those facts. Keep in mind there's other evidence. But that's your basic analysis. That's how you determine whether somebody's guilty of a charge or not. And we haven't gone over his statement. We haven't gone over [Jane III's] testimony, [Jane I's] [sic] testimony, Eric's, [mother['s]]. There's so much more evidence in this case to make that conclusion. But that ultimately in the end is your basic conclusion, because [Jane I] *has been telling the truth.*

RT 2134 (emphasis added). The California Court of Appeal reasonably determined that the prosecutor was making a fair comment on the evidence in the record by pointing out the strength of the corroborating evidence from which the jury could be sure that Jane I was telling the truth.

The second challenged statements (i.e., that Jane I was "telling the truth" and there was "no

reason to disbelieve her") also were made just after the prosecutor had covered specific evidence.

The prosecutor (a) quoted at length Jane I's testimony about the incident in which Mr. Raygoza rubbed her thigh while she was asleep, and (b) played the portion of the police interview DVD in which Mr. Raygoza "demonstrates how he touched [Jane I] at a hotel on the leg and foot area." RT 2137-39. The prosecutor then continued:

> So there's touching going on. Corroborates [Jane I's] testimony. Defendant tells you that she's being touched. [Jane I's] telling you she's being touched. *She's telling the truth*. You have to determine whether she's telling the truth or not. You get a credibility instruction. And there's *absolutely no reason to disbelieve her*.

RT 2139 (emphasis added). The California Court of Appeal reasonably determined that the prosecutor was making a fair comment on the evidence in the record by pointing out the strength of the corroborating evidence from which the jury could be sure that Jane I was telling the truth. Moreover, in this instance, the prosecutor even reminded jurors that they had to determine whether the witness was telling the truth and that they would receive an instruction about making that determination – making it even less likely that jurors would have failed to make their own credibility determination.

The third challenged statement (i.e., "the girls aren't making this up") also followed shortly after the prosecutor described specific evidence. The prosecutor (a) quoted at length Jane I's testimony about Mr. Raygoza touching her buttocks and breasts, and (b) played an excerpt from the police interview DVD in which Mr. Raygoza "confirms the touching." RT 2150-51. The prosecutor continued:

> And the clip I just showed you, it's around the same part of the interview. Detective Bravo had asked the defendant to clarify the touching of the breast that [Jane I] also said he touched her on the butt. The defendant goes on to define a separate event where he touched [Jane I] on the butt. The bottom line in all that, the value of the defendant's statement is not necessarily – he's not necessarily coming clean completely clean to Detective Bravo. The value in this is it leaves you with an abiding conviction that everything is true. That *the girls aren't making this up*. That's the real value in this. And later on I'm going to tell you – I'm going to give you portions of his statement where he tells you what his intent was. So difficult to figure out what people intend on doing. But this defendant tells us. And that's the true value of the defendant's statement, his admission.

43

RT 2151-52 (emphasis added).  The California Court of Appeal reasonably determined that the prosecutor was making a fair comment on the evidence in the record by pointing out the strength of the corroborating evidence – here, Mr. Raygoza's own admissions to the police about both the touching and his intent -- from which the jury could determine that the victims were truthful.  The prosecutor's argument appropriately tried to get the jury to understand that Mr. Raygoza's own statement to the police admitting a touching, and his intent showed that the victims were not fabricating their stories of having been touched improperly by Mr. Raygoza.

In none of these challenged statements did the prosecutor do the things that are typically thought of as vouching.  The prosecutor did not tell the jury that he personally believed the girls – he did not state, for example, "I believe the girls are telling the truth."  And the prosecutor did not in any way suggest that there was evidence not presented to the jury that supported the victims' credibility or showed the defendant's guilt.  The prosecutor's comments were reasonable inferences from the trial evidence he identified that showed the witnesses' credibility by corroborating their statements.  *See Necoechea*, 986 F.2d at 1279 (prosecutor's argument, "I submit to you, ladies and gentlemen, that [witness is] not lying.  I submit to you that she's telling the truth" did not amount to vouching and instead "is simply an inference from evidence in the record. . . .  These statements do not imply that the government is assuring [this witness'] veracity, and do not reflect the prosecutor's personal belief.").

Further, the jury instructions informed the jurors that it was their duty to determine witness credibility from the evidence.   The judge instructed the jury:  "You alone must judge the credibility or believability of the witnesses."  CT 407.  The judge also instructed the jury:  "Nothing that the attorneys say is evidence.  In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence."  CT 404.  The judge further instructed that jurors "must follow the law as I explain it to you, even if you disagree with it.  If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions."  CT 398.  "[A]rguments of counsel generally carry less weight with a jury than do instructions from the court.  The former are usually billed in advance to the jury as matters of argument, not evidence . . . and are likely viewed as the statements of advocates," whereas the

latter "are viewed as definitive and binding statements of the law." *Boyde v. California*, 494 U.S. 370, 384-85 (1990). Mr. Raygoza has provided no reason to depart from the normal presumption that jurors follow the court's instructions. *See Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985). In other words, he has provided no reason to expect that the jurors did not understand that they, not the prosecutor, were the sole determiners of the believability of a witness. Following their instructions, jurors would not have believed that they could rely on the prosecutor's statements that the victim-witnesses were believable and avoid determining for themselves whether the victim-witnesses were believable.

The *Darden* standard – "a prosecutor's improper comments will be held to violate the Constitution only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process" -- is a "very general one." *Parker*, 567 U.S. at 45, 48 (citations and internal quotation marks omitted). That means that, for purposes of federal habeas review under AEDPA, the state courts have "more leeway . . . in reaching outcomes in case-by-case determinations." *Id.* (citations and internal quotation marks omitted). It cannot be said that the California Court of Appeal's rejection of Mr. Raygoza's prosecutorial misconduct claim was contrary to or an unreasonable application of *Darden*. He is not entitled to the writ on this claim.

F.    Cumulative Error Claim

Mr. Raygoza contends that the cumulative effect of the errors prevented him from receiving a fair trial. In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several constitutional errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford,* 334 F.3d 862, 893–95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution). Here, there were not multiple federal constitutional trial errors to accumulate. Mr. Raygoza therefore is not entitled to relief under the cumulative error doctrine.

G.    No Certificate of Appealability

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims

45

debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## IV. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**. The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: November 15, 2018

_____
EDWARD M. CHEN
United States District Judge